OPINION
{¶ 1} Plaintiff-appellant State of Ohio appeals from an order suppressing statements made by defendant-appellee Jessica Saunders. The State contends that the trial court erred by finding that Saunders performed her end of a bargain, pursuant to which she gave the statement, and that the State failed to perform its end of that bargain. We conclude that there is evidence in the record to support both findings with respect to a statement Saunders made at a police station on September 28, 1999. However, we conclude that the trial court erred by suppressing statements she made five days earlier, on September 23, 1999, which preceded the bargain that the State allegedly failed to honor. Accordingly, the order of the trial court suppressing Saunders's statements is Reversed with respect to the statements she made on September 23, 1999; that order is Affirmed in all other respects; and this cause is Remanded for further proceedings.
 I {¶ 2} On September 23, 1999, Patrick Vaughn and Nicholas Cole allegedly attacked and stabbed Michael Sanchez numerous times, and then left him in a wooded area in Darke County, Ohio. Although seriously wounded, Sanchez survived.
 {¶ 3} Jessica Saunders had been with Vaughn, Cole and Sanchez at a bar, called the Asylum, in Dayton, the preceding night. During the early morning hours of September 23, 1999, Saunders, having obtained two rides to retrieve her car, which she had left at the victim's house trailer, arrived at the victim's residence, was met by sheriff's deputies, and ultimately gave a statement to Detective John Green of the Darke County Sheriff's Department.
 {¶ 4} Five days later, on September 28, 1999, Saunders arrived at the Piqua Police Department, to be interviewed by Detective Mark Whittaker and Detective Sergeant William Grice of the Darke County Sheriff's Department. A videotape of that interrogation is in evidence, along with a written transcript.
 {¶ 5} About one-third of the way through the written transcript of the interrogation at the police station, Whittaker, the detective interviewing Saunders, told her that he knew she was lying, and that she could either cooperate, or be charged with Obstructing Justice, as a third degree felony. In response, Saunders asked, "Can I contact my lawyer and get back with you later?" To this, Whittaker responded: "You can contact your lawyer. Like I said, you can get up and walk out of here if that's what you want to do but when you get done talking to your lawyer I may not be interested in talking to you anymore. I don't have to talk to you."
 {¶ 6} About two-thirds of the way through the written transcript of the interrogation at the police station, after a cigarette break and one other break, and after Grice had joined Whittaker, Whittaker, who had already told Saunders her choice was between being charged with Obstructing Justice as a third-degree felony or being charged with Obstructing Justice as a fifth-degree felony, expanded upon, and re-affirmed, the proposition he was offering Saunders. This exchange is worth quoting in full:
 {¶ 7} "GRICE: You're into a felony. Now, it's up to you how hard that felony you wanna get hit with.
 {¶ 8} "WHITTAKER: Let me tell you something. You can help yourself out right now or you could continue sittin here and give us a line of bullshit, and uh which I really don't have a whole lotta time for it. I'll just let you just get up and walk out that door and we'll forget about that felony five.
 {¶ 9} "SAUNDERS: Well I don't want a felony period but I guess if I'm going to get charged with one regardless if I try to avoid it in court or not . . . I'd rather have a felony five.
 {¶ 10} "WHITTAKER: Okay.
 {¶ 11} "SAUNDERS: But I really don't know where they [Cole and Vaughn] are.
 {¶ 12} "WHITTAKER: But I need one hundred percent, one hundred percent no lies, no bullshit, no jerking our chain. And I'll tell you something else, if somewhere down the road after this is all said and done and I haul Nicko [Nicholas Cole] in and he starts yapping and he will. He's going to look after himself like, like Sgt. Grice has said. You know these guys are going to get caught. It's not like they're not ever gonna get caught.
 {¶ 13} "SAUNDERS: I know. You can't run from something forever.
 {¶ 14} "WHITTAKER: That's right.
 {¶ 15} "GRICE: And when you've got the Marine Corp, you've got . . .
 {¶ 16} "WHITTAKER: I told her about the FBI and she knows they're a fugitive from justice now. These guys are in deep shit.
 {¶ 17} "GRICE: Deep shit.
 {¶ 18} "WHITTAKER: Let me tell you something. Since these boys are gonna get caught, I mean that's gonna happen. It's going to be happening here probably a lot sooner that you would think. But uh, the deal is if I drag these boys in here and I talk to them and they're looking out for their own best interest to avoid a life term or whatever, whatever the term would be, to get it reduced, by cooperating which essentially all, always happens, especially when they're in their shoes. I mean my god, the guy lived. He can identify them. We all know who it is, right? It's not like, I guess what I'm saying their chances of getting off are not good, very likely they're gonna get convicted. They're gonna want uh work with us and when they go through the whole nine yards I'm gonna go through everything. I'm gonna ask them, I'm gonna ask them what level of cooperation you gave us. What you knew and what you didn't know. And I'm telling you what, if what they say doesn't add up with what you've told us, a felony five deal is out the fricken door. Because this is, this is the deal right now on tape, on recording for you, for me to go and try to get you a felony five obstructing versus a felony three, I want 100 percent total cooperation. 100 percent.
 {¶ 19} "SAUNDERS: What do you mean try? Are you're going to get me a felony five or do you mean you're going to try to get me a felony five and there is still a chance I can have a felony three?
 {¶ 20} "WHITTAKER: I'm going to try to see to it that you get a felony five.
 {¶ 21} "SAUNDERS: But that's try, that's not promising me anything.
 {¶ 22} "GRICE: We're not the prosecutor's office.
 {¶ 23} "WHITTAKER: The problem is I'm not the prosecutor.
 {¶ 24} "GRICE: We can't say 100 percent, we can tell you 99 percent of the time when we ask for that because somebody cooperated with us, we get it.
 {¶ 25} "WHITTAKER: I hold a lot of weight. I hold a lot of weight because it's me who goes and files the charges. It's me who presents it to the prosecutor, it's me who presents it to the grand jury. And if I go to the prosecutor and I tell him, this is the deal, I have it on the tape, it's tape recorded, I've offered her a felony five versus a felony three, then there's a really good chance that you're gonna get it. Very, very good chance. Okay?
 {¶ 26} "SAUNDERS: All right.
 {¶ 27} "WHITTAKER: We want to know everything you know.
 {¶ 28} "SAUNDERS: Well, you're gonna hear a lot of repeated stuff because most of the stuff I told you . . .
 {¶ 29} "WHITTAKER: Well that's all right. That's all right."
 {¶ 30} This court has viewed the entire videotape of the interrogation. After the exchange quoted above, Saunders became much more forthcoming, giving long narrative answers. At the conclusion of the interrogation, Saunders asked, "Do you guys have any more questions for me?" Grice responded, "You're being straight with us. Because you know we're going to eventually find out everything." Whittaker added, "I'll stick to my guns, but if I . . . if I find out later on, I just want to make sure . . ." Saunders was charged with Obstructing Justice, as a felony of the third degree. She filed a motion that included, in part, a motion to suppress all the statements she had given to police officers.
 {¶ 31} Following a hearing on Saunders's motion to suppress, at which Whittaker and Saunders both testified, the trial court rendered a decision on December 16, 2002, in which it concluded that the statements were not coerced, but that they were obtained as the result of an agreement to pursue less serious charges against Saunders, that Saunders relied upon the apparent authority of the law enforcement officials to make the charging decision, and that Saunders completed her part of the agreement. The trial court concluded that Saunders was entitled to the benefit of her bargain, "to wit: that she be charged with a lesser offense of Obstruction of Justice, a felony of the fifth degree." Nevertheless, the trial court expressed its reluctance to compel the prosecuting attorney to amend the indictment, concluding that the decision to amend the charges was within the sole discretion of the prosecuting attorney, and citing State v. Fulton (1990), 66 Ohio App.3d 215, for that proposition. The trial court noted that it was permitted "to either (1) suppress the Defendant's statement if the reduction is not offered by the Prosecuting Attorney prior to trial or other dispositions; or (2) compel the reduction of the charge in order to give the Defendant the benefit of her bargain." The trial court cited Fulton, supra, and State v. Mathews
(1982), 8 Ohio App.3d 145, for that proposition. The trial court's order of December 16, 2002, concluded by determining that the statements are admissible, but that the trial court was retaining "jurisdiction over the issue of whether the Prosecuting Attorney complies with the need to reduce the indictment to the lesser offense."
 {¶ 32} On February 20, 2003, the State filed a "Notice to Proceed," wherein it served notice upon the trial court and Saunders that the State, "under the Court's decision of December 16, 2002 will be proceeding forward in the above captioned matter on Obstructing Justice under R.C. 2921.32(A)(5) as a felony of the third degree, not a felony of fifth degree."
 {¶ 33} On March 11, 2003, the trial court entered the order from which this appeal is taken. That order, in its entirety, is as follows:
 {¶ 34} "This matter came before the Court upon the Notice filed by the State of Ohio on February 20, 2003 in response to the decision of this Court on December 16, 2002 wherein the State of Ohio was directed to prosecute this matter for the lessor [sic] offense of Obstructing Justice, a felony of the fifth degree. [The defendant was originally indicted for Obstructing Justice, a felony of the third degree.]
 {¶ 35} "The State of Ohio has advised the Court that it will not reduce the offense for trial purposes. In the absence of an agreement by the State of Ohio to proceed on the lesser offense, this Court retains jurisdiction to enforce its prior decision. See State v. Fulton (1990),66 Ohio App.3d 215. Therefore, as an alternative remedy regarding the Defendant's previous motion to dismiss,
 {¶ 36} "IT IS THEREFORE ORDERED AND DECREED that the statements by the Defendant are hereby suppressed." (Bracketed sentence in original.)
 {¶ 37} From the trial court's suppression order, the State has appealed. Saunders has not filed an answer brief.
 II {¶ 38} The State `s sole assignment of error is as follows:
 {¶ 39} "Trial court errored [sic] in suppressing the appellant's statement when the state of ohio indicated that it was proceeding to trial on a charge of obstructing justice, a felony of the third degree."
 {¶ 40} The State contends that the trial court erred when it found that Saunders had performed her part of the bargain, and that the trial court also erred when it found that the State had failed to perform its end of the bargain.
 {¶ 41} The latter assertion is easily dealt with. The State contends that, after the trial court's initial decision, the State offered Saunders an opportunity to plead guilty to Obstructing Justice as a fifth degree felony, but that this offer was refused. The State contends that this satisfied its part of the bargain that Grice and Whittaker made with Saunders for her statement.
 {¶ 42} An interesting question might arise as to whether an offer to Saunders to plead guilty to Obstructing Justice as a fifth degree felony would have satisfied the State's obligation, or whether the nature of the bargain was that Grice and Whittaker promised Saunders that she would only be charged with Obstructing Justice as a fifth degree felony, without any obligation on her part to plead guilty to the reduced charge. We need not resolve this issue, however, because we find nothing in the record to support the State's assertion that it offered Saunders an opportunity to plead guilty to the lesser charge. There is also nothing in the record, of course, to indicate that the trial court was aware that an offer of this nature was made. Accordingly, the State has failed to portray error in this regard.
 {¶ 43} The State also contends that Saunders failed to perform her end of the bargain, because she was less than one hundred per cent truthful in her statement given at the police station.
 {¶ 44} Whittaker had caught Saunders in at least two lies that had some significance. Both of these related to her initial assertion, during the interview, that she had had no contact with Cole, with whom she had had a sexual relationship, after she left Cole, Vaughn and Sanchez at the bar, before the stabbing occurred. She later admitted that she had given Cole and Vaughn a ride to the bus station after the stabbing, and had received one telephone call from Cole on her cell phone after that. These admissions were made before Whittaker and Grice clarified, and re-affirmed, the nature of the bargain. From our review of the videotape, it appears that Saunders's demeanor changed significantly after this. It was no longer difficult to get information from her. She gave long, narrative statements, without having to be prompted, concerning all of her activities during the crucial days. The only quarrel that Whittaker and Grice had with Saunders concerning her veracity, after the deal had been clarified and re-affirmed, was Whittaker's stated belief that Saunders must have known Cole's whereabouts, after Cole had fled the area. Specifically, Whittaker asserted his belief that Saunders knew that Cole and Vaughn had gone to stay with a Marine Corps "buddy" in South Carolina. Saunders asserted that she was never told their whereabouts. When Whittaker confronted Saunders with the fact that her friend, Selena, had told him this, Saunders reminded Whittaker that Selena had had one conversation with Cole and Vaughn over Saunders's cell phone, to which Saunders was not privy.
 {¶ 45} In any event, the interview concluded with Whittaker and Grice assuring Saunders that if her information checked out, the deal they had proposed was still on.
 {¶ 46} At the suppression hearing, Saunders testified that the information she gave Whittaker and Grice was true. The State offered no evidence to rebut this assertion. Consequently, there is evidence in the record from which the trial court could find, as it evidently did, that Saunders performed her end of the bargain by being "100 percent" truthful with Whittaker and Grice after that bargain had been clarified and re-affirmed. Consequently, we conclude that the trial court did not err in suppressing the statement Saunders gave at the police station.
 {¶ 47} However, the trial court's order of suppression broadly encompasses all of the statements Saunders gave to police. This would include the statements she gave to the police on September 23, 1999. There is no evidence that any agreement was in effect at that time. Accordingly, we conclude that the trial court erred by including Saunders's September 23, 1999 statement within its scope.
 {¶ 48} The State's sole assignment of error is sustained in part, and overruled in part.
 III {¶ 49} The State's sole assignment of error having been sustained in part and overruled in part, that part of the order of the trial court ordering suppression of Saunders's statements given on September 23, 1999, is reversed; the order of the trial court is affirmed in all other respects; and this cause is remanded for further proceedings.
Wolff and Glasser, JJ., concur.